No. 21-3162

# In the United States Court of Appeals for the Seventh Circuit

————————

ARTHUR GRADY,
PETITIONER-APPELLANT,

*v.*

DAVID GOMEZ,
RESPONDENT-APPELLEE.

————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CASE NO. 1:20-CV-02530
THE HONORABLE MARY M. ROWLAND

————————

## BRIEF AND REQUIRED SHORT APPENDIX OF PETITIONER-APPELLANT, ARTHUR GRADY

KELLY MANNION ELLIS
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-8321
kmannion@winston.com

*Attorneys for Petitioner-Appellant*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.: **21-3162**
Short Caption: **Grady v. Gomez**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

   **Arthur Grady**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   **WINSTON & STRAWN LLP**

(3) If the party or amicus is a corporation:

   (i) Identify all its parent corporations, if any; and

   **N/A**

   (ii) List any publicly held company that own 10% or more of the party's or amicus' stock:

   **N/A**

Attorney's Signature:  ___/s/ Kelly Mannion Ellis___        Date:  November 23, 2022

Attorney's Printed Name: **Kelly Mannion Ellis**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).        **Yes**

Address:       Winston & Strawn LLP
               35 W. Wacker Drive
               Chicago, IL 60601
Phone Number:  (312) 558-8321
Fax Number:    (312) 558-5600
Email:         kmannion@winston.com

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ..................................................... 1

INTRODUCTION AND ISSUES PRESENTED ..................................... 1

ORAL ARGUMENT REQUEST ........................................................ 2

STATEMENT OF THE CASE........................................................... 2

    I.    Underlying Events ......................................................... 2

    II.   Grady's Trial Proceedings ............................................ 3

    III.  Direct Appeal ............................................................. 5

    IV.  Postconviction Proceedings ........................................ 6

    V.   District Court Habeas Proceedings ............................. 9

STANDARD OF REVIEW................................................................ 10

SUMMARY OF THE ARGUMENT ................................................... 11

ARGUMENT ................................................................................ 12

    I.    Appellate counsel was constitutionally deficient for failing to raise a meritorious sufficiency claim stemming from inconsistent verdicts.................................................................... 13

          a.    The jury's special verdict finding negates the essential element of identity under the state's sole theory, meaning that the evidence was insufficient to sustain a conviction for first-degree murder.................................................... 14

          b.    The state is estopped from arguing that the jury convicted Grady on an accomplice theory, and even if the jury did so, the evidence was insufficient to sustain that conviction. .......... 17

    II.   Appellate counsel's deficient performance prejudiced Grady because his guilty conviction may have been vacated had counsel raised these challenges. ........................................................ 26

CONCLUSION............................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashburn v. Korte,*
 761 F.3d 741 (7th Cir. 2014) ................................................................... 20

*Baugh v. Nagy,*
 2022 U.S. App. LEXIS 27469 (6th Cir. Sept. 30, 2022) ........................ 26

*Cone v. Bell,*
 556 U.S. 449 (2009) ................................................................................ 11

*Fagan v. Washington,*
 942 F.2d 1155 (7th Cir. 1991) ................................................................ 20

*Gideon v. Wainwright,*
 372 U.S. 335 (1963) .................................................................................. 2

*Gilbreath v. Winkleski,*
 21 F.4th 965 (7th Cir. 2021) ..................................................................... 2

*Jones v. Barnes,*
 463 U.S. 745 (1983) ................................................................................ 13

*Jones v. Zatecky,*
 917 F.3d 578 (7th Cir. 2019) .................................................................. 13

*Laxton v. Bartow,*
 421 F.3d 565 (7th Cir. 2005) ............................................................ 11, 27

*Makiel v. Butler,*
 782 F.3d 882 (7th Cir. 2015) .................................................................. 12

*Miller–El v. Cockrell,*
 537 U.S. 322 (2003) ................................................................................ 11

*People v. Allen,*
 2022 IL App (1st) 190158 ....................................................................... 17

*People v. Crowder,*
 239 Ill. App. 3d 1027 (3d Dist. 1993) .................................................... 18

*People v. Garrett,*
 401 Ill. App. 3d 238 (1st Dist. 2010) ................................................ 21, 22

*People v. Grady,*
    2015 IL App (1st) 132160-U ............................................................................ 6, 16

*People v. Grady,*
    2019 IL App (1st) 163012-U .......................................................................*passim*

*People v. Jaimes,*
    21 N.E.3d 501 (Ill. App. Ct. 2014) ................................................................. 21

*People v. Majka,*
    849 N.E.2d 428 (Ill. App. Ct. 2006) ............................................................... 23

*People v. Page,*
    516 N.E.2d 1371 (Ill. App. Ct. 1987) ............................................................. 22

*People v. Palmer,*
    2021 IL 125621 ............................................................................................ 6, 19

*People v. Walker,*
    911 N.E.2d 439 (Ill. App. Ct. 2009) ............................................................... 24

*People v. Wheeler,*
    929 N.E.2d 99 (Ill. App. Ct. 2010) ................................................................. 22

*Peoples v. Peoples,*
    2015 IL App (1st) 121717 ........................................................................... 16, 18

*Ramirez v. Tegels,*
    963 F.3d 604 (7th Cir. 2020) .......................................................................... 13

*Rompilla v. Beard,*
    545 U.S. 374 (2005) ................................................................... 11, 17, 20, 27

*Shaw v. Wilson,*
    721 F.3d 908 (7th Cir. 2013) ...................................................................... 13, 26

*Strickland v. Washington,*
    466 U.S. 668 (1984) ...................................................................................*passim*

*United States v. Contreras,*
    820 F.3d 255 (7th Cir. 2016) .......................................................................... 23

*United States v. Gaudin,*
    515 U.S. 506 (1995) ........................................................................................ 14

*United States v. Gonzales,*
    841 F.3d 339 (5th Cir. 2016) ...................................................................... 14, 17

*United States v. Lucarelli*,
    476 F. Supp. 2d 163 (D. Conn. 2007) .................................................. 15

*United States v. Pierce*,
    940 F.3d 817 (2d Cir. 2019).................................................................. 14

*United States v. Powell*,
    469 U.S. 57 (1984) ...................................................................... 15, 20

*United States v. Randolph*,
    794 F.3d 602 (6th Cir. 2015) ........................................................ 14, 15

*United States v. Shippley*,
    690 F.3d 1192 (10th Cir. 2012) .................................................... 14, 15

*Westray v. Brookhart*,
    36 F.4th 737 (7th Cir. 2022) .............................................................. 10

*Williams v. Taylor*,
    529 U.S. 362 (2000) ........................................................................... 11

## Statutes

720 ILCS 5/5-2(c) ..................................................................................... 20

720 ILCS 5/9-1(a)(3)................................................................................. 21

730 ILCS 5/5-4.5-20 ................................................................................... 5

730 ILCS 5/5-8-1(d)(iii) ........................................................................... 16

28 U.S.C. § 1291......................................................................................... 1

28 U.S.C. § 2253......................................................................................... 1

28 U.S.C. § 2254............................................................................ 1, 2, 11, 27

## Other Authorities

Circuit Court Rule 34(a) ............................................................................ 2

## JURISDICTIONAL STATEMENT

This appeal arises from a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the Northern District of Illinois. The district court denied habeas relief but issued a certificate of appealability, giving rise to appellate jurisdiction in this Court. A2–14, *Grady v. Gomez*, 2021 WL 5006691 (N.D. Ill. Oct. 28, 2021); *see also* 28 U.S.C. §§ 1291, 2253(a), 2253(c)(1)(A). Petitioner filed a timely notice of appeal on November 19, 2021. R. 1.

## INTRODUCTION AND ISSUES PRESENTED

This habeas appeal arises from the tragic robbery and murder of Ralph Turner Jr. on a snowy night in January 2009. A classic case of "he said, he said," the state's case at trial rested on the testimony of a single, biased co-defendant, and some minor circumstantial evidence. The state's sole theory at trial was that, after a long night at the casino, Petitioner Arthur Grady followed Turner home and attempted to rob him of casino proceeds. In the process, Grady shot and killed him.

But the state presented no direct evidence to support this theory: no eye-witness testimony that Grady pulled the trigger, and no forensics evidence of any kind tying Grady to the murder. Nevertheless, the jury convicted Grady of first-degree murder. But a glaring and fundamental problem with the conviction exists: the jury answered a special verdict question, unanimously finding that Grady was ***not guilty*** of discharging the firearm that caused Turner's death. The jury's answer to the special verdict question creates an irreconcilable conflict that mandates the setting aside of his conviction as a matter of law. Unfortunately, Grady's counsel on

direct appeal failed to recognize and raise this, implicating constitutional concerns about ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).

Justice "cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). That right encompasses not just the presence of counsel but the *effective assistance of counsel* "to produce just results." *Strickland*, 466 U.S. at 685. The failure of Grady's appellate counsel to raise an obvious sufficiency claim stemming from inconsistent verdicts prejudices Grady and undermines the integrity of the justice system. This Court should grant Grady's habeas petition and vacate his conviction.

## ORAL ARGUMENT REQUEST

Grady and undersigned counsel believe that oral argument would assist the Court in reviewing the state court decision at issue. We respectfully request oral argument pursuant to Circuit Court Rule 34(a).

## STATEMENT OF THE CASE

### I. Underlying Events

On January 30, 2009, Ralph Turner Jr. was shot and killed. A15, *People v. Grady*, 2019 IL App (1st) 163012-U ¶ 4.[1] The State charged Grady and a co-defendant, Aaron Bronson, with the murder. Bronson pled guilty and testified against Grady. "The State's theory of the case was that defendant and Bronson planned to rob the

---

[1] Federal courts presume that "the factual findings of the state court are correct for the purposes of habeas review unless the petitioner rebuts the presumption of correctness by clear and convincing evidence." *Gilbreath v. Winkleski*, 21 F.4th 965, 968 (7th Cir. 2021) (citing 28 U.S.C. § 2254(e)(1)).

victim, whom they had followed out of a casino, but, when the victim resisted, defendant [Grady] shot him." *Id.*

## II.    Grady's Trial Proceedings

In the leadup to Grady's trial, several relevant events occurred. One, Bronson pled guilty to first-degree murder charges as an accomplice. A31–32. Two, the state *nolle prossed* several charges against Grady, including his armed robbery charges. A41–59. After dismissal, six counts remained: (1) intentional murder, (2) knowing murder, (3) felony murder to wit: armed robbery, (4) intentional murder/personal discharge (count 7 in the indictment), (5) knowing murder/personal discharge (count 8 in the indictment), and (6) felony murder/personal discharge (count 9 in the indictment). *See id.*

The state's case during trial depended solely upon circumstantial evidence and the biased testimony of Bronson. The state offered no forensics evidence linking Grady to the shooting of Turner. The police found no blood on Grady's clothes or person, although they located blood on Turner's chest and pants. A78, A146, A149–51. They found no fingerprints on the gun that shot Turner. A154. Nor did the State offer any evidence of gun residue tied to Grady. A152–53.

During the trial, Bronson testified against Grady. He told the jury that he and Grady were roommates. A17, *Grady*, 2019 IL App (1st) 163012-U ¶ 12. They were together at the Horseshoe Casino in Hammond, Indiana, on the night of January 29, 2009. *Id.* According to Bronson, Grady approached him and "told him that he had lost all his money but some guys were playing roulette and they had about $30,000 in winnings. [Grady] suggested to Bronson that they should rob the men. Bronson

agreed." *Id.* Bronson testified that, later that night (*i.e.*, the early morning of January 30), they followed Turner and his group of friends back to Chicago. Once their car stopped outside Turner's home and two men (including Turner) exited, Bronson pulled over and supposedly "told [Grady] not to exit his truck but [Grady] said he needed the money and jumped out" of Bronson's SUV. *Id.* ¶ 13. Bronson testified that Grady approached Turner outside his home, and Turner "punched [Grady] in the face knocking him to the ground. As Bronson started to drive in reverse, he heard two to three gunshots." *Id.*

Grady testified in his own defense. He testified that, on the night of January 29, 2009, he spent most of the night walking around the casino and watching other gamblers play, including stopping at Turner's table to see what the excitement was. *Id.* ¶ 16. He never spoke to Bronson about robbing anyone. *Id.* ¶ 17. When it was time to leave, Bronson went to the parking garage to pick up his truck while Grady waited in the valet area of the casino. *Id.* ¶ 16. When Bronson pulled up, Grady got in the SUV, plugged in his cell phone, and fell asleep. Then:

> [Grady] was awoken when the truck came to a sudden stop. [He] did not recognize where he was. He looked out of the window and saw two men on the sidewalk. The men started walking in opposite directions. Bronson jumped out of the truck and approached one of the men. The man punched Bronson and he fell to the ground. [Grady] got out of the passenger seat in order to break up the fight. He then heard two gunshots. [Grady] jumped into the driver's seat of the truck and drove in reverse down the block.

> [Grady] parked the truck about two blocks away and realized he did not have his cell phone. He decided to walk to a nearby gas station to make a phone call. On his way to the station, he was stopped by the police and they ultimately let him go. [He] eventually went home and went to sleep. Bronson came home and the pair discussed what happened after [Grady] left the scene. [Grady] was arrested later that afternoon. He testified

that the gun recovered from his apartment belonged to Bronson . . . .
[He] denied talking to Bronson about robbing anyone.

*Id.* ¶¶ 16–17.

During closing arguments, the prosecutor reiterated the state's sole theory of guilt: Grady shot Turner. *See, e.g.*, A182 ("All of this is circumstantial evidence pointing the finger at the defendant . . . as the person who shot and killed Ralph Turner."); A183 ("Aaron Bronson was the driver, aids, abets, agrees to aid . . . This defendant [is] the one who pulls the trigger. That's what the evidence shows."); A185 ("Aaron [Bronson] told you I'm an accessory. He explained that to you. He knew what his responsibility was. He knew what role he played."); A186 ("Aaron [Bronson] is not the shooter in this case. He is not . . . . The defendant is the one, the defendant."); A187 ("[Bronson] was an accessory.").

On May 24, 2013, the jury entered its verdict. On the general verdict form, the jury found Grady guilty of first-degree murder. A189. On the special verdict form, the jury found Grady not guilty of personally discharging the firearm that proximately caused Turner's death. A188.

The trial court sentenced Grady to 60 years in prison, a *de facto* life sentence and the maximum range for first-degree murder. A15, *Grady*, 2019 IL App (1st) 163012-U ¶ 3; *see also* 730 ILCS 5/5-4.5-20. Bronson received a 24-year sentence as part of his plea deal. *See* A17, *id.* ¶ 14.

## III.  Direct Appeal

After his sentencing, Grady pursued a direct appeal. He was appointed counsel from the Office of the State Appellate Defender, and counsel filed an opening brief on

October 8, 2014. A192–230. That brief raised only two claims: (1) an excessive sentence claim and (2) a mittimus correction claim. *Id.* Counsel failed to raise any claim of error related to verdict inconsistency, including any challenge to the sufficiency of evidence to sustain a first-degree murder conviction based on the state's sole trial theory (Grady was the shooter) and the inconsistent special verdict that followed (Grady was not the shooter).

In light of appellate counsel's failure to raise these significant claims, Grady filed a pro se supplemental brief on November 4, 2014 (and again on February 19, 2015), raising these and other trial errors. *See* A234, 239–41 (noting the same). But it was too late: The appellate court rejected those supplemental submissions. *Id.*

On October 16, 2015, the Illinois Appellate Court held that the trial court did not abuse its discretion in imposing a 60-year sentence. A308, *People v. Grady*, 2015 IL App (1st) 132160-U ¶¶ 18–20. The appellate court also ordered the correction of the mittimus to reflect additional presentence custody credit. *Id.* ¶ 21. It never addressed Grady's pro se claims, including the inconsistent special verdict.

Grady filed a petition for leave to appeal, which the Illinois Supreme Court denied on January 20, 2016. A309, 48 N.E.3d 674.

## IV.    Postconviction Proceedings

On July 6, 2016, Grady filed a pro se postconviction petition raising a number of claims. A231–305. Among others, Grady argued that his counsel on direct appeal provided ineffective assistance in several ways. A234–35.

For one, he argued, appellate counsel failed to raise a meritorious issue surrounding the contested tendering of an inapplicable accountability instruction. *Id.*

6

As he explained, the trial court abused its discretion in allowing the instruction because "the State's theory and evidence [was] that petitioner was the actual shooter or nothing at all . . . the State presented no evidence to support the [accountability] instruction and the facts of the case [were] limited." A272–73. The improper instruction, Grady argued, "created the risk of jury confusion" and "relieved the State of its burden to prove petitioner guilty beyond a reasonable doubt as the shooter." A273.

Relatedly, Grady explained, appellate counsel failed to raise a meritorious claim about the insufficiency of evidence to sustain a conviction for first-degree murder. A234–35, A239–40, A280–304. The circumstantial evidence failed to establish beyond a reasonable doubt that Grady was the shooter, and the jury discredited the sole direct evidence that suggested it—Bronson's testimony. All of this led the jury to render a special verdict finding that Grady was ***not*** the shooter. Nonetheless, the jury rendered an irreconcilable verdict of guilty for first-degree murder—when no theory and no evidence supported it. A300. Grady's postconviction petition concluded: "If there was valid reason why counsel decided not to raise the other post-trial claims, insufficiency of evidence should have at least been raised, where petitioner was acquitted of being the shooter but still convicted of intentional murder." A240.

On September 28, 2016, the trial court dismissed Grady's pro se postconviction petition as "frivolous and patently without merit." A330. In relevant part, the trial court held that his claim on the erroneous accountability instruction "fail[ed]"

because "contrary to [his] contention, the State did not have a 'sudden change of theory' that misled the jury." A326. According to the trial court's postconviction assessment:

> The State's theory throughout the entire trial was that [Grady] was the shooter. The State did not deviate from this theory during closing arguments, nor did the State argue at any point that [Grady] was not the shooter. In fact, during closing arguments, the prosecutor clearly stated: "Aaron [Bronson] is not the shooter in this case. He is not. The only – he might be tall. He might be thin, but the only person there that night, the only person dressed in all dark clothes, the only person in black was the defendant. The defendant is the one, the defendant." *Transcript of Proceedings* at OO-282 (May 23, 2013). Accordingly, because it is directly refuted by the record, [Grady's] claim fails.

A326–27.

Without any issue-by-issue reasoning, the trial court also rejected Grady's related claim that his counsel on direct appeal was ineffective: whether for failing to challenge the improper accountability instruction, for failing to challenge the sufficiency of evidence to sustain a conviction for first-degree murder, or for any other reason Grady raised in his petition. A329–30. The trial court concluded that the issues he raised were not meritorious; therefore, Grady suffered no prejudice and counsel's assistance was not ineffective. *Id.*

Grady appealed the trial court's denial of postconviction relief. He re-raised his ineffective assistance claim under the performance-and-prejudice standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), focusing on counsel's refusal to bring an obvious sufficiency challenge. A332–66. Among other facts bearing on the sufficiency analysis, Grady noted, the jury "expressed doubt about the evidence, asking multiple questions over the course of several hours of deliberation, at the

conclusion of which it rendered a split verdict finding Grady guilty of murder but finding that the allegation that Grady personally discharged a weapon had not been proven." A348. Grady thus requested that the appellate court "reverse the dismissal of his pro se post-conviction petition and remand for second-stage post-conviction proceedings." A350.

On May 10, 2019, the Illinois Appellate Court affirmed the trial court's dismissal of Grady's pro se postconviction petition. A15–20, 2019 IL App (1st) 163012-U. Instead of addressing both prongs under *Strickland*, the court analyzed only whether Grady was "prejudiced by counsel's failure to raise a sufficiency of the evidence challenge on direct appeal." *See* A15, 18–19, *id.* ¶¶ 1, 24, 31. After reciting a hodgepodge of circumstantial evidence, as well as Bronson's non-credible and biased testimony, the appellate court found the evidence was "sufficient for the jury to reasonably conclude that [Grady] was guilty of the first degree murder." A19, *id.* ¶ 28. It affirmed the trial court's disposition without ever addressing the inconsistent verdict issue, the theory under which the state tried Grady versus the theory under which the jury apparently convicted him, and whether there was sufficient evidence to sustain the latter. *See generally id.*

On January 29, 2020, the Illinois Supreme Court summarily denied Grady's petition for leave to appeal the appellate court's decision. A367, 140 N.E.3d 266.

## V.  District Court Habeas Proceedings

Grady filed his habeas petition on April 24, 2020. A368–80. That petition re-raised a number of constitutional issues, including the failure by his counsel on direct appeal to challenge the sufficiency of the evidence necessary to sustain his conviction.

9

Among other things, Grady argued that the "unanimous finding of not guilty by the jury on the special verdict form negates an essential element of the offense of first-degree murder" and calls into question the sufficiency of evidence necessary to sustain his conviction. A378–79. Grady also faulted his appellate counsel for failing to challenge the improper tendering of jury instructions related to accomplice liability. A379.

On October 28, 2021, the district court denied Grady's habeas petition but issued a certificate of appealability on the inconsistent verdict issue "because reasonable jurists could differ on the question of whether the state appellate court reasonably addressed the inconsistent verdicts under *Strickland*." A14, *Grady v. Gomez*, 2021 WL 5006691, at \*5. Grady filed a timely notice of appeal on November 19, 2021. R. 1.

On July 25, 2022, the Court appointed the undersigned counsel to represent Grady in this appeal. R. 16.

## STANDARD OF REVIEW

This court reviews "a district court's denial of a petition for habeas corpus *de novo* and findings of fact for clear error." *Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022) (citation omitted). The Antiterrorism and Effective Death Penalty Act governs habeas petitions. Under the AEDPA, federal courts typically apply a deferential standard of review to a state court's adjudication of a claim on the merits. But when a state court does not reach the merits of a given claim, "the claim is reviewed *do novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009). That is the situation here. On postconviction review, the Illinois Appellate Court never addressed Grady's

10

sufficiency claim stemming from inconsistent verdicts as part of its *Strickland* analysis, despite this issue being presented for review. As a result, *de novo* review applies. *Cone*, 556 U.S. at 472. At the very least, because the Illinois Appellate Court never addressed the performance prong under *Strickland*, this Court should apply *de novo* review in examining this element. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice . . . and so we examine this element of the *Strickland* claim *de novo*.").

Further, even when AEDPA deference applies, such deference "does not by definition preclude relief." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). A federal court may set aside a state court decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court unreasonably applies federal law when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Laxton v. Bartow*, 421 F.3d 565, 570 (7th Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000)).

## SUMMARY OF THE ARGUMENT

The district court's certificate of appealability questions whether the Illinois Appellate Court "reasonably addressed the inconsistent verdicts under *Strickland*." A14, *Grady*, 2021 WL 5006691, at *5. The Illinois Appellate Court in fact did not address the inconsistent verdict issue at all, much less in any reasonable manner.

11

Had it done so, the Illinois Appellate Court would have seen that the jury's special verdict finding negates a finding of guilt under the state's chosen theory as a matter of law, meaning that the evidence was necessarily insufficient to sustain Grady's conviction. Further, even assuming that the jury convicted Grady on an accomplice theory (it did not, as even the state concedes), the evidence was still insufficient to sustain the conviction under that unpresented theory. The Illinois Appellate Court erred in ignoring this and in finding that Grady's counsel on direct appeal was constitutionally effective. This Court should apply *de novo* review, reverse that finding, and grant a writ of habeas corpus.

## ARGUMENT

In *Strickland*, the Supreme Court established that a defendant has not only a Sixth Amendment right to counsel, but also a right to that counsel's *effective assistance*. 466 U.S. 668, 684–98 (1984). Counsel's assistance is constitutionally ineffective if their performance is deficient and that deficiency prejudices the defendant. *Id.* at 687. To establish deficiency, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." *Id.* at 688. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This general framework also governs ineffective-assistance claims directed to appellate (as opposed to trial) counsel—albeit with a "special gloss." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Appellate counsel does not have to raise every non-

frivolous argument for their client. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013). But "they *are* expected to 'select[] the most promising issues for review.'" *Id.* at 915 (quoting *Jones v. Barnes*, 463 U.S. 745, 752–53 (1983)). To that end, appellate counsel performs deficiently under *Strickland* if they fail to raise a claim that is both "obvious" and "clearly stronger" than the claims actually raised. *Id.* And that deficiency prejudices a defendant "if counsel bypassed a nonfrivolous argument" that "had a reasonable chance of success on appeal." *Id.* at 918–19. This is not a particularly high hurdle: A defendant need only show that the issue "had a better than fighting chance at the time." *Jones v. Zatecky*, 917 F.3d 578, 583 (7th Cir. 2019) (quoting *Shaw*, 721 F.3d at 916); *Ramirez v. Tegels*, 963 F.3d 604, 617 (7th Cir. 2020). In this case, Grady has established both prongs, and the Court should grant his habeas petition. We address the deficiency prong first, followed by the performance prong.

## I. Appellate counsel was constitutionally deficient for failing to raise a meritorious sufficiency claim stemming from inconsistent verdicts.

On direct appeal, appellate counsel pursued an excessive sentence challenge and a mittimus correction challenge, ignoring the core issue: Whether the evidence was sufficient to convict Grady for first-degree murder beyond a reasonable doubt, given the jury's finding that Grady was not the shooter, the state's sole theory and evidence that he *was* the shooter, and Bronson's discredited testimony. As Petitioner Grady sets forth further below, because that sufficiency challenge was "obvious" and "clearly stronger" than the excessive sentence and/or mittimus correction claims actually pursued, *Shaw*, 721 F.3d at 915, counsel's performance was deficient.

a. **The jury's special verdict finding negates the essential element of identity under the state's sole theory, meaning that the evidence was insufficient to sustain a conviction for first-degree murder.**

The jury's special verdict finding negates the essential element of identity under the state's sole theory of first-degree murder, which means the state's evidence is insufficient to sustain a conviction as a matter of law. "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995). "[O]nce a special interrogatory is asked, the jury's answers have legal force." *United States v. Gonzales*, 841 F.3d 339, 353 (5th Cir. 2016). When "a jury's special verdict finding negates an essential element of the offense, the defendant must be acquitted[.]" *United States v. Randolph*, 794 F.3d 602, 612 (6th Cir. 2015). This is true whether the jury's special verdict finding negates an essential element of the charged crime or more broadly negates guilt under the state's chosen theory. *See Gonzales*, 841 F.3d at 349 (analyzing the latter and noting that a "special interrogatory must be given effect and can negate a general verdict of guilty"). Courts have not hesitated to set aside convictions or otherwise grant appropriate relief under such circumstances. *See Randolph*, 794 F.3d at 612 (vacating conviction when there was an inconsistency "in the same count as to the same defendant"); *United States v. Shippley*, 690 F.3d 1192, 1193–96 (10th Cir. 2012) (grappling with inconsistent special verdict finding, when "[i]n effect the jury both convicted *and* acquitted [the defendant] of the charged [crime]"); *United States v.*

*Pierce*, 940 F.3d 817, 824 (2d Cir. 2019) (setting aside guilty verdict that was inconsistent with special interrogatory answers).

This precise situation exists here. The state's murder theory was simple: Grady pulled the trigger. But the jury entered a special verdict unanimously finding, in no uncertain terms, that Grady did not. Nonetheless, it found him guilty of murder. In other words, the jury "return[ed] a guilty verdict but indicate[d] in its answers to special interrogatories that [Grady] is innocent." *Shippley*, 690 F.3d at 1196. That result cannot stand. Under the circumstances of this case, the unanimous finding that Grady did not pull the trigger "is only susceptible to one interpretation: the government failed to prove [Grady] guilty of the charged [crime] beyond a reasonable doubt." *Randolph*, 794 F.3d at 612; *see also Shippley*, 690 F.3d at 1196 (special verdict finding showed "that the government had failed to prove the facts necessary to support such a [guilty] verdict"); *United States v. Lucarelli*, 476 F. Supp. 2d 163, 169 (D. Conn. 2007) (special verdict form "ended up having a life beyond [its original] purpose inasmuch as it became the vehicle to reflect the jury's finding that the Government's proof . . . fell short"). In this case, the jury's finding that Grady was not the shooter necessarily means that the state's proof fell short. *See United States v. Powell*, 469 U.S. 57, 67 (1984) (the Constitution affords "protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts."). Insufficient evidence exists to support Grady's conviction for first-degree murder under the state's sole theory, which made Grady's identity as the shooter an essential element of the charged offense.

Illinois courts have applied these principles and reversed convictions under similar facts. In *People v. Peoples*, for example, the state brought first-degree murder charges against the defendant under 720 ILCS 5/9-1(a)(1) (intentional murder) and 720 ILCS 5/9-1(a)(2) (knowing murder)—the same statutory counts brought against Grady. *See* 2015 IL App (1st) 121717 ¶ 101. The jury found the *Peoples* defendant guilty of first-degree murder after the trial court "injected into the trial a theory of guilt by accountability," even though the state prosecuted him "only as a principal shooter and did not, at any time, argue that defendant was guilty on an accountability theory." *Id.* ¶¶ 3, 55. The state also requested a "special jury verdict form for the firearm enhancement, which required that the State prove that defendant, 'during the commission of the offense, personally discharged a firearm that proximately caused death'" to the victim. *Id.* ¶ 101 (citing 730 ILCS 5/5-8-1(d)(iii)). When the jury answered the special verdict form in the negative, meaning that the state had not proved personal discharge beyond a reasonable doubt, the Illinois Appellate Court noted:

> We see no meaningful difference in the language constituting the offense of first-degree murder and the enhancement language. It is undisputed that the "act" that allegedly "cause[d] death" in this case was the discharge of a bullet that killed [the victim]. It is impossible to reconcile the jury's finding that defendant "perform[ed] the acts which cause[d] death" to [the victim] with its finding that defendant did *not* "personally discharge[] a firearm that proximately caused the death" of [the victim]. The jury found, in effect, both that defendant killed [the victim] with a bullet from his gun, and that defendant did not kill [the victim]. These two verdicts are diametrically opposed to one another.

*Id.* ¶ 102 (emphasis in original). As a result of this diametric inconsistency, the court reversed the defendant's conviction for first-degree murder and remanded for a new

trial. *Id.* ¶ 123. Other Illinois courts have reached the same conclusion under similar circumstances. *See also, e.g.*, *People v. Allen*, 2022 IL App (1st) 190158 ¶ 60 (same result, given the state's exclusive pursuit of a theory of guilt as the alleged shooter and the "inconsistency between the jury's finding of guilt of first-degree murder and the finding that [the defendant] did not fire the weapon that killed the victims").

Under the circumstances of this case and well-settled legal principles, the jury's finding that Grady was not the shooter should have ended the inquiry in favor of Grady. The trial court should have given that special verdict finding effect. *Gonzales*, 841 F.3d at 349 (courts cannot "ignore" special interrogatory answers and "pretend that the jury based its finding of guilt" on some other, unpresented legal theory). And appellate counsel was deficient for not recognizing this failure. *Rompilla*, 545 U.S. at 380 (measuring performance against an "objective standard of reasonableness" "under prevailing professional norms" (citations omitted)). The clearly inconsistent verdict renders Grady's conviction improper as a matter of law, and the Court should grant Grady's habeas petition.

> **b.    The state is estopped from arguing that the jury convicted Grady on an accomplice theory, and even if the jury did so, the evidence was insufficient to sustain that conviction.**

Nevertheless, the state may argue that Grady's conviction should be upheld because the jury could have convicted Grady under an accomplice theory. The district court suggested as much in its opinion, noting that Illinois law "allows the state to prosecute, convict and sentence those involved in *some* way with a crime as legally accountable for the entire crime." A10, *Grady*, 2021 WL 5006691, at *4. The Court should reject any such argument for at least two reasons.

*First*, the state did not present an evidentiary case on accomplice liability at trial. *See supra* at p. 5. More than that, the state has refuted any notion that the jury convicted Grady under an accomplice theory. A410 ("Throughout his brief, defendant claims that he was convicted as an 'accomplice,' but that argument is a red herring."). The trial court rejected that position too, specifically concluding that "the State's theory throughout the entire trial was that [Grady] was the shooter. The State did not deviate from this theory during closing arguments, nor did the State argue at any point that [Grady] was not the shooter." A326–27. Indeed, because accomplice liability so assuredly did ***not*** serve as the basis for the jury's conviction, the postconviction trial court rejected Grady's legal challenge to the accomplice instructions as "directly refuted by the record[.]" *Id.*[2] Although it correctly observed that the state chose to present a single evidentiary theory to the jury, the trial court failed to reconcile the inconsistent verdicts that followed under that chosen theory. For the reasons discussed above, that was an error of constitutional magnitude, as was counsel's failure on direct appeal to raise the issue for resolution in Grady's favor.

If the state now wants to pivot from those prior positions, this Court should reject any such attempt. The Illinois Supreme Court has squarely held under

---

[2] Although the certificate of appealability does not cover claims related to jury instruction errors, it is worth noting that the jury never should have received an accomplice instruction, given the state's choice to pursue an "all-or-nothing" theory of guilt as a principal. *See People v. Crowder*, 239 Ill. App. 3d 1027, 1030 (3d Dist. 1993); *see also Peoples*, 2015 IL App (1st) 121717 ¶ 94 ("Accountability was not a theory pursued at trial, and thus, as applied to the circumstances of this case, it was incorrect for the trial court to instruct the jury that it could convict on a theory of accountability.").

analogous circumstances that "the State cannot now change course in a subsequent proceeding and assert the exact opposite of what it asserted at petitioner's criminal trial." *People v. Palmer*, 2021 IL 125621 ¶ 77. The *Palmer* case, which involved certificate-of-innocence proceedings, is instructive.

In his underlying criminal trial, the *Palmer* petitioner was "charged with first degree murder on the basis that he personally beat the victim to death and the State [later] concede[d] that petitioner was not the principal attacker[.]" *Id.* ¶ 59. When the state argued that a certificate of innocence was not available because the petitioner was guilty as an accomplice, the Illinois Supreme Court shut this down. It observed that the state's accomplice theory was never "presented to the trier of fact in the underlying criminal proceedings. To the contrary, the State argued at petitioner's jury trial that petitioner alone beat the victim to death[.]" *Id.* ¶ 66; *see also id.* ¶ 71. The *Palmer* court thus concluded that "judicial estoppel forecloses the State's changed position." *Id.* ¶ 77.

The same holds true here. The state cannot save its conviction against Grady by arguing that the jury found him guilty as an accomplice. That has never been the state's theory of guilt, and that has never been the state's position. In this case, the jury's special verdict finding "directly contradict[ed] the State's original theory of petitioner's guilt" and should have resulted in an acquittal. *See id.* ¶¶ 77–80 (concluding that petitioner was entitled to a certificate of innocence); *see also Fagan v. Washington*, 942 F.2d 1155, 1160 (7th Cir. 1991) ("[T]he state must live with the

consequences of having proceeded on a theory that it could not establish with the certitude required in criminal cases.").

***Second***, even if the jury convicted Grady on an unpresented accomplice theory, and even if the state is not estopped from taking an inconsistent position on the issue, any evidence the jury may have relied on for doing so is insufficient to sustain the conviction. Specifically, even assuming, *arguendo*, that the jury based its finding of guilt on a theory that Bronson shot Turner and Grady was Bronson's accomplice (again, this is speculation as to what the jury thought), the evidence cannot sustain that accomplice conviction. If this Court reaches this fallback analysis at all, it should review the underlying evidentiary basis *de novo*, which requires an assessment of whether "the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." *Powell*, 469 U.S. 57, at 67; *Rompilla*, 545 U.S. at 390. That review shows that counsel was deficient for failing to raise this sufficiency issue on appeal, too.

It is true that, under Illinois law, "a person charged as a principal can be convicted upon evidence showing that he was in fact only an aider or abetter." *Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014); *see also* 720 ILCS 5/5-2(c). But to do so, the state must prove beyond a reasonable doubt that the alleged accomplice (here, Grady) "(1) solicited, ordered, abetted, or agreed or attempted to aid another in the planning or commission of the offense; (2) participated before or during the commission of the offense; and (3) had the concurrent, specific intent to promote or facilitate the commission of the offense." *People v. Jaimes*, 21 N.E.3d 501, 509 (Ill.

App. Ct. 2014). "To prove intent, the State must present evidence that the defendant shared the criminal intent of the principal or that there was a common criminal design." *Id.* In this case, the state failed to prove these elements beyond a reasonable doubt.

To start, *no* evidence supported a finding that Grady agreed to aid anyone in any intentional or knowing murder (720 ILCS 5/9-1(a)(1)-(2)): Not even Bronson has claimed that anyone harbored that type of intent or engaged in that type of conduct. Eliminating those two charges leaves only felony murder, which requires proof that Grady and another person intended to commit the predicate felony (here, armed robbery, *see* A422), "and in the course of or in furtherance of such crime or flight therefrom, he or she or another participant causes the death of a person." 720 ILCS 5/9-1(a)(3). But this argument, too, fails. The state dismissed the armed robbery charge against both Grady and Bronson shortly before trial. *See* A41–59. And to sustain a conviction for felony murder under an aiding and abetting theory, it is not enough to point to an alleged accomplice's "involvement in the underlying crime of robbery, for which he was not prosecuted." *People v. Garrett*, 401 Ill. App. 3d 238, 249 (1st Dist. 2010). Rather, the state must point to evidence establishing beyond a reasonable doubt that the defendant "shared a common design with whoever shot the victim," the identity of whom the state has not proved in this case. *Id.* at 248. Here, as in *Garrett*, the way in which this murder case was prosecuted led to a "fatal lack of proof of causation[,]" which necessarily means that the state's proof "fell short of what is required in an accountability case for felony murder[.]" *Id.* at 248–49.

21

Furthermore, even if the Court assumes that Bronson was the shooter (again, an allegation that the state has not proved, and one that Bronson himself denies), the evidence was *still* insufficient to sustain a felony murder conviction against Grady. At trial, the only direct evidence of any agreement or intent by Grady to commit an armed robbery was Bronson's testimony. But such accomplice testimony "is often fraught with serious problems." *People v. Page*, 516 N.E.2d 1371, 1379 (Ill. App. Ct. 1987). Because an accomplice "may have been promised leniency or harbor ill will towards the accused"—both true of Bronson—his testimony "only should be accepted with the utmost caution and subjected to the highest scrutiny." *Id.*; *see also People v. Wheeler*, 929 N.E.2d 99, 108 (Ill. App. Ct. 2010). And in this case, Bronson's testimony was particularly troubling.

To start, the centerpiece of Bronson's story was that Grady shot Turner. The jury rejected that narrative, expressly finding that Grady was ***not*** the shooter. By the jury's own finding, Bronson's testimony was not credible. This makes sense because of all the other biases, gaps, and inconsistencies in Bronson's testimony. For example:

- Bronson admitted to lying to police about key facts about the night of the robbery during his initial interviews. For example, Bronson had originally testified that Grady drove at one point while following Turner, but changed his story after pleading guilty. A165–67.

- Bronson fled and was on the run from police for two years. A172.

- Bronson claimed that Grady was punched during the robbery, A160, but Grady had no signs of such a scuffle when the police stopped him moments later. A77.

- Bronson owned the revolver that was later determined to have shot Turner. A163–64.

- Bronson lived in the same apartment as Grady and stored items in the very room where the gun was found. A159, 179–80.

The jury also heard that, in one moment of truth, Bronson wrote a letter stating that Grady had "snitched" about Bronson's conduct in robbing Turner, leading Bronson to state, "what goes around comes around." A168–69. Bronson then pleaded for the recipient not to "jeopardize [his] agreement with the State by showing them this letter if it is incriminating enough." A170–71.

All this calls Bronson's testimony into question, and points to his guilt as the shooter and mastermind of the robbery. At the very least, Bronson's testimony was so flawed that no reasonable juror could accept it beyond a reasonable doubt. *People v. Majka*, 849 N.E.2d 428, 435–36 (Ill. App. Ct. 2006) ("A reviewing court may reject testimony as unbelievable, 'but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt.'" (citation omitted)); *see also United States v. Contreras*, 820 F.3d 255, 263 (7th Cir. 2016) (while credibility determinations are typically for the factfinder, a reviewing court need not accept them where the testimony is "so unbelievable that no reasonable factfinder could credit them"). As a result, Bronson's testimony was insufficient to establish Grady's guilt as an accomplice beyond a reasonable doubt. As Grady himself testified, he never planned or agreed with Bronson (or anyone else) to rob Turner, much less to commit *armed* robbery. *See* A17, *Grady*, 2019 IL App (1st) 163012-U ¶¶ 16–17 (discussing Grady's testimony).

The only other evidence arguably showing an improper agreement between Bronson and Grady was minor circumstantial evidence, none of which was sufficient

in the totality to sustain a conviction for aiding and abetting beyond a reasonable doubt. For example, Grady's phone was found on the same street as Turner's body—not next to the victim, but rather some distance away. A149. But this is not suggestive of anything improper: Grady readily admits to having been at the scene, precisely because Bronson had followed Turner home while Grady was sleeping. A176–77. Grady's mere presence at the scene is not sufficient to find him accountable as an accomplice to armed robbery and felony murder. *See, e.g.*, *People v. Walker*, 911 N.E.2d 439, 451 (Ill. App. Ct. 2009) ("The mere presence of a defendant at the scene of the crime is also insufficient to make a defendant accountable, even if it is coupled with defendant's flight from the scene or defendant's knowledge that a crime was being committed."). The state also elicited testimony from witnesses that Grady was near their casino table, *see, e.g.*, A62, and showed video clips to that effect, A80–145, attempting to depict some nefarious intent on Grady's part. But the state's own witnesses admitted that Grady had visited ***other*** tables, A145, and that it was common for casino patrons to stop by tables where people are winning and shouting, A63–64. Given that Grady was at the casino for hours, it is no surprise that he appeared a few times near Turner's roulette table. This evidence is certainly not enough to establish a shared plan to rob Turner, and do so using a firearm, beyond a reasonable doubt.

The Court should weigh the paucity of the state's trial evidence against the overwhelming evidence establishing Turner's innocence of any wrongdoing:

- The only two witnesses to the robbery, Anthony McGee and Pamela Snow Woodard, did not identify Grady. A67–69, 71, 155.

24

- One of the 911 callers gave a description that the suspect was "light-skinned," but the police never followed up with that caller. A184. A state witness also described to police that the person was "light to medium complexion." A156. These descriptions fit Bronson, not Turner. *See* A440–42. In addition, although Grady was wearing dark clothing on the night in question, so too was Bronson. *See* 2019 IL App (1st) 163012-U ¶ 12.

- Shortly after the robbery, Grady was stopped by police but released. A74. Although Turner's wallet and phone were missing, neither was found on Grady, A72, 75–76, nor did Grady have a gun, A73. He also bore no signs of having been punched in the snow by Turner, as described by Bronson, nor did he have blood on his clothes. A77–78.

- No forensic evidence linked Grady to the shooting of Turner. No blood was found on his clothes—even though blood was on Turner's chest and on the piece of clothing ripped off his pants. A78, A146, A149–51. Grady's fingerprints were not found on the revolver that shot Turner. A154. Nor did the State offer any evidence of gun residue tied to Grady. A152–53

- The police recovered the gun in a shared storage space, amongst possessions belonging to Bronson and Grady's girlfriend—***not*** Grady's room, even though Bronson claimed Grady had put the gun in Grady's room. A161, 175.

- Unlike Bronson, Grady went home. He did not flee. Although Bronson told Grady to run, he didn't because he "didn't do anything wrong." A178.

In sum, the state's evidence of any agreement to rob Turner using a firearm boiled down to Bronson's testimony. But that biased and incredible testimony was so deeply flawed that no reasonable juror could believe it. Reviewing courts have granted habeas relief under similar circumstances. *See, e.g., Baugh v. Nagy*, 2022 U.S. App. LEXIS 27469, at *32 (6th Cir. Sept. 30, 2022) ("With the state's only witness lacking credibility and so much uncertainty about [defendant's] role, if any, in the murder of [the victim], no reasonable juror could find beyond a reasonable doubt that

[the defendant] is guilty of first-degree felony murder."). On the other hand, the evidence of Grady's innocence was overwhelming.

The state presented insufficient evidence to convict Grady of felony murder under an aiding and abetting theory, and counsel on direct appeal committed a constitutional error by failing to recognize and raise this. *See Shaw*, 721 F.3d at 915 (appellate counsel performs deficiently under *Strickland* if they fail to raise a claim that is both "obvious" and "clearly stronger" than the claims actually raised). Accordingly, the evidence does not support a finding of guilt beyond a reasonable doubt under any accomplice theory.

## II.    Appellate counsel's deficient performance prejudiced Grady because his guilty conviction may have been vacated had counsel raised these challenges.

Under *Strickland*, a deficiency by appellate counsel prejudices a defendant "if counsel bypassed a nonfrivolous argument" that "had a reasonable chance of success on appeal." *Shaw*, 721 F.3d at 918–19. Prejudice plainly exists here: Reviewing courts routinely set aside convictions that are inconsistent with special verdict findings or otherwise grant appropriate relief when the evidence is insufficient to sustain the conviction. But for counsel's deficient performance, the reviewing court should have granted such appropriate relief here. *Rompilla*, 545 U.S. at 390 (prejudice is satisfied when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The Illinois Appellate Court unreasonably applied *Strickland* in concluding that Grady's counsel was constitutionally effective despite failing to raise this obvious sufficiency claim on appeal. *Laxton*, 421 F.3d at 570; *see also* 28 U.S.C. § 2254(d)(1) (habeas relief is

warranted when the state court's adjudication "involved an unreasonable application" of established federal law). And the district court erred in not finding as such. This Court should grant Grady's habeas petition.

## CONCLUSION

For these reasons, this Court should grant Grady's habeas petition and vacate his conviction.

Respectfully submitted:


  /s/*Kelly Mannion Ellis*
Kelly Mannion Ellis
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
312-558-8321
kmannion@winston.com

*Attorneys for Petitioner-Appellant
Arthur Grady*


Dated: November 23, 2022

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface requirements of Circuit Rule 32(b) and the type-volume limitations of Circuit Rule 32(c). The text and footnotes are printed in proportionally spaced 12-point Century Schoolbook type. According to the word-count function of Microsoft Word 2016, the brief contains 7,694 words.

*/s/ Kelly Mannion Ellis*

Dated: November 23, 2022

## CERTIFICATE OF SERVICE

I certify that on November 23, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that the following counsel of record will be served electronically (*see* Cir. R. 25(d)):

Katherine M. Doersch
OFFICE OF THE ATTORNEY GENERAL
100 W. Randolph Street
State of Illinois Center
Chicago, IL 60601

*Counsel for Appellee David Gomez*

I further certify that, in compliance with this Court's forthcoming order, I will transmit to the Clerk 15 copies of the brief and 10 copies of the appendix. *See* Cir. R. 31(b).

  /s/ *Kelly Mannion Ellis*

Dated: November 23, 2022

## CIRCUIT RULE 30(D) STATEMENT

Pursuant to Circuit Rule 30(d), I certify that all materials required by Circuit Rule 30(a) and (b) are included in the appendix.

/s/ *Kelly Mannion Ellis*

Dated: November 23, 2022

# TABLE OF CONTENTS

**Page**

**Volume I**

Judgment in a Civil Case (October 28, 2021)..........................................................................A1

Memorandum Opinion and Order (October 28, 2021) .........................................................A2

**Volume II**

State Post Conviction Appellate Decision (May 10, 2019) ...................................................A15

Bronson Plea Hearing Report of Proceedings (August 7, 2012) ..........................................A21

Grady Indictment (December 29, 2010) ..............................................................................A41

Transcript Excerpt: Criminal Jury Trial (May 17, 2013)....................................................A60

Transcript Excerpt: Criminal Jury Trial (May 20, 2013)....................................................A65

Transcript Excerpt: Criminal Jury Trial (May 21, 2013)...................................................A147

Transcript Excerpt: Criminal Jury Trial (May 22, 2013)...................................................A157

Transcript Excerpt: Criminal Jury Trial (May 23, 2013)...................................................A173

Jury Verdict Forms (May 24, 2013) ..................................................................................A188

Direct Appeal Brief and Argument of Defendant-Appellant (October 8, 2014) .................A192

Pro-Se Petition for Post-Conviction Relief (July 6, 2016) ................................................A231

State Direct Appeal Decision (October 16, 2015) .............................................................A306

Illinois Supreme Court Summary Denial (January 20, 2016).............................................A309

State Trial Court Post Conviction Decision (September 28, 2016)......................................A310

State Post Conviction Brief and Argument of Petitioner-Appellant
    (July 28, 2018) .............................................................................................................A332

Supreme Court Summary Denial of Postconviction Appeal (January 29, 2020) .................A367

Grady Petition to the Northern District of Illinois (April 24, 2020)....................................A368

State's Post Conviction Appellate Brief .............................................................................A381

Grady Jury Instructions......................................................................................................A416

Photo of Bronson ...............................................................................................A440

Photo of Grady ..................................................................................................A442

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

Arthur Grady,

Petitioner,

v.

David Gomez, Warden, Stateville
Correctional Center,

Respondent.

Case No.  20-cv-02530
Judge Mary M. Rowland

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $            ,

       which ☐ includes            pre–judgment interest.
           ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other:  in favor of Respondent, David Gomez, and against Petitioner, Arthur Grady. Petitioner's habeas petition [1] is denied.

---

This action was *(check one)*:

☐ tried by a jury with Judge Mary M. Rowland presiding, and the jury has rendered a verdict.
☐ tried by Judge Mary M. Rowland without a jury and the above decision was reached.
☒ decided by Judge Mary M. Rowland.

Date:  10/28/2021             Thomas G. Bruton, Clerk of Court

                           Dawn A. Moreno, Deputy Clerk

A1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARTHUR GRADY,

Petitioner,

v.

DAVID GOMEZ, Warden, Stateville
Correctional Center

Defendant.

Case No. 20-cv-02530

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Arthur Grady, an Illinois prisoner, petitions for a writ of habeas corpus under 28
U.S.C. § 2254 [1]. The Petition is denied along with Petitioner's request for an
evidentiary hearing. A certificate of appealability is warranted.

### I.    Background

A federal habeas court presumes that state court factual findings are correct
unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is
unreasonable only if it ignores the clear and convincing weight of the evidence.")
(internal quotation marks omitted). The Appellate Court of Illinois is the last state
court to have adjudicated Grady's case on the merits. *People v. Grady*, 2019 IL App
(1st) 163012-U (Ill. App. May 10, 2019) (unpublished order) (reproduced at Dkt. 18-3); *See also People v. Grady,* 2015 IL App (1st) 132160-U (Ill. App. Oct. 16, 2015)
(reproduced at Dkt. 18-1). The following sets forth the facts as that court described

A2

them and the procedural background of the state criminal and post-conviction proceedings.

### A.     Factual Background

This case involves the shooting death of Ralph Turner, Jr. on January 30, 2009. *Grady,* 2015 IL App (1st) at ¶ 3. Petitioner Arthur Grady and his co-defendant Aaron Bronson were charged with first-degree murder. *Id.* Aaron Bronson pled guilty and testified against Grady. At trial, the State presented evidence that Grady and Bronson planned to rob Turner after seeing him win money at a casino in Indiana. According to the charges, when Turner resisted during the robbery, Grady shot him. *Id.* at ¶ 4. The State introduced evidence that Turner and his friends were at Horseshoe Casino in Indiana. Once Turner and his friends returned to Chicago, and while one of Turner's friends was dropping Turner off at his house, the SUV Grady was traveling in stopped and a "man in a dark hoodie" got out of the passenger seat. One of Turner's friends and a woman who lived down the block testified they heard gun shots, and saw the SUV driving down the street in reverse just before 4 a.m. *Id.*

Aaron Bronson, Grady's co-defendant, testified against Grady at trial in exchange for a guilty plea to first degree murder and twenty-four years in prison. *Id.* at ¶ 7. He testified that while at the casino with Grady, Grady told him that he lost money and he saw a group of men who had "about $30,000" and he thought they should rob them. *Id.* Bronson agreed. *Id.* Later Grady told Bronson to get his truck because the group was leaving. Bronson got his truck and waited for Grady to tell him that it was time. When Bronson went to pick Grady up, he saw the group of men

A3

enter a black Mercedes. *Id.* at ¶ 8. He and Grady followed the Mercedes. until they saw it come to a stop. *Id.* At that point, Grady jumped out of the truck with a gun and ran up to Turner as he was going to his front door. Bronson testified that he then saw Grady hovering over a man lying on the ground. *Id.* Bronson fled to Grady's apartment and waited. When Grady returned, he told Bronson that he did not get any money and he tossed the gun. Bronson also testified that Grady went back out to find the gun and eventually returned with it. *Id.*

Using Grady's cell phone recovered at the scene, video footage from the casino and a photo array lineup, Chicago Police obtained a search warrant for Grady's apartment. During the execution of the warrant, police found two guns, one of which was later determined by an expert to be the murder weapon. *Id.* at ¶ 6.

Grady testified at trial that he and Bronson were not together at the casino. *Id.* at ¶ 9. He denied talking to Bronson about robbing the group. *Id.* Instead, when he and Bronson left the casino, Grady fell asleep and did not wake up until the truck came to a sudden stop. *Id.* at ¶ 10. At that time, Grady saw Bronson get out of the truck, walk up to a man on the sidewalk and engage in conversation. *Id.* Grady testified that he got out of the car when the man punched Bronson, intending to stop the fight, but returned to the truck when he heard two gunshots. *Id.* After leaving the scene, Grady realized he could not find his phone. *Id.* at ¶ 11. According to Grady, the gun found in his apartment belonged to Bronson. *Id.*

The jury "found defendant guilty of first-degree murder, but also found that the state had not proven the allegation that defendant personally discharged a

firearm that proximately caused death to another person." *Id.* at ¶13. At sentencing, the State presented evidence of Grady's criminal history. Grady's grandfather testified in mitigation and discussed defendant's progress and work history. Grady apologized to the victim's family but maintained his innocence regarding Bronson's crime. *Id.* at ¶14. The sentencing court discussed the testimony presented at sentencing and found that the defendant had "very little, if any, rehabilitative potential" and sentenced him to sixty years in prison. *Id.* at ¶15. The trial court later denied Grady's motion to reconsider his sentence.

### B.     Direct Appeal

On direct appeal, defendant argued his sentence was excessive and the trial court abused its discretion in imposing "what is essentially a life sentence where the jury found that he was not the shooter, but rather, was only accountable for his co-defendant's actions." *Id.* at ¶ 17. The Illinois Appellate Court affirmed the sentence, only making a small correction to reflect days already served. *Id.* at ¶¶ 20-21. The Illinois Supreme Court denied his petition for leave to appeal (PLA). *See* Dkt. 17, Exh. B.

### C.     Post-Conviction

In July 2016, Grady filed a *pro se* post-conviction petition with sixteen claims, two of which are before this Court. The appellate court dismissed the petition and Grady appealed. Notably, Grady argued on appeal that appellate counsel was only ineffective for failing to challenge the sufficiency of the evidence. *See* 17-J, *Post-conviction Appellant's Brief*. The Illinois Appellate Court found that the evidence

against petitioner was "overwhelming" and there was no probability an appellate court would have overturned Grady's conviction. *See* Dkt. 17-C, at ¶ 31. Grady appealed to the Supreme Court on both the above claim and a prosecutorial-misconduct claim. The Illinois Supreme Court denied the PLA. *See* Dkt. 17-D.

## II. Discussion

### A.    Request for Evidentiary Hearing

Grady requests an evidentiary hearing (Dkt. 23, at 37), but provides no arguments in his petition or his reply as to why an evidentiary hearing is necessary or appropriate.[1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the availability of an evidentiary hearing on federal habeas review, and generally bars them except in narrow exceptions. *See* 28 U.S.C. §§ 2254(e)(2)(A), (B); *see also. Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). When the facts are in dispute a court must hold a hearing if the applicant did not receive a full and fair evidentiary hearing in state court. However, an evidentiary hearing is barred when not requested at every stage in state court unless Grady shows his claim relies on a "new constitutional law … that was previously unavailable" or "a factual predicate that could not have been discovered through the exercise of due diligence" when there is  "clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* 28 U.S.C. §§ 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479 (2000). Grady did not request an evidentiary hearing at every stage in state court and

---

[1] Grady filed a document entitled a Traverse Introduction on March 31, 2021. [23] The Court accepts this as Grady's reply brief that was due on January 8, 2021. [20].

therefore is barred from requesting one here given that he has not alleged a claim that relies on new constitutional law nor facts that could not have been discovered in earlier proceedings. Grady's request for an evidentiary hearing is denied.

### B.    Excessive Sentence by Trial Court

Grady claims the trial court abused its discretion when it sentenced him to sixty years in prison despite the jury returning a special verdict that they were unable to find he was holding the weapon that killed Turner but finding him guilty of first-degree murder. Grady cites no case law to support his contention that the jury's verdict was insufficient to support a sixty-year sentence. Dkt. 1 at 7. The sentence falls within the guideline range in Illinois for first degree-murder. 730 ILCS 5/5-8-1. The Seventh Circuit has held that "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *Henry v. Page,* 223 F.3d 477, 482 (7th Cir.2000) *(quoting United States v. Vasquez,* 966 F.2d 254, 261 (7th Cir.1992)). As the Illinois Appellate Court found, there is no evidence that Grady's sentence was based on any abuse of discretion.

The distinction between the general verdict form and special verdict form do not provide a basis to find the trial court judge abused his discretion. The record from the state court indicates that the "trial court was well aware of the facts in the case, including the jury's finding that the State had not proved defendant personally discharged the firearm." *Grady,* 2015 IL App. (1st) 132160-U, at *4. Illinois law specifically allows the state to prosecute those associated with a crime, even if they

themselves did not actually commit the crime meaning, the trial court judge was within his bounds to sentence Grady within the legislatively authorized range for first degree murder. *See* 720 ILCS 5/5-2-3. Grady is not entitled to a writ of habeas corpus based on his excessive sentence claim. *See United States ex rel Hernandez v. Pierce,* 429 F. Supp. 918, 928 (N.D. Ill. Apr. 20, 2006) (holding that a state prisoner's excessive sentence claim is not entitled to a writ of habeas corpus if it falls within state law guidelines); s*ee also Page,* 223 F.3d at 482 (holding a sentence authorized by Illinois law was not based on an abuse of discretion).

### C.  Ineffective Assistance of Appellate Counsel for Failing to Challenge the Sufficiency of Evidence

Grady argues that appellate counsel was ineffective for failing to raise insufficiency of evidence on direct appeal. Dkt. 1 at 9. Grady contends that because the jury did not find the essential element that Grady shot Turner, he could not be convicted of murder and therefore, his appellate counsel's failure to raise this claim directly changed the likely outcome of his direct appeal. *Id.* In his reply, Grady raises two instances where appellate counsel failed to challenge the sufficiency of the evidence:

> "(1) where the jury found the evidence insufficient to convict Petitioner of personally discharging the firearm that proximately caused Turners [sic] death but found him guilty of first degree intentional murder of Ralph Turner that had to have occurred with the same firearm the jury acquitted him of personally discharging (citations omitted); (2) where the inherently suspicious accomplice testimony of [the] states [sic] key witness Aaron Bronson was uncorroborated, incredible and unreliable to sustain conviction upon proof beyond a reasonable doubt. (citations omitted).

Dkt. 23, at 5-6. To receive habeas relief on an ineffective assistance of counsel claim, Grady must meet the familiar performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984). Under *Strickland*, Grady must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) he was prejudiced by that deficient performance. *Id.* at 687-88. To satisfy the second element, Grady must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Overall, judicial review of counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689; *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011).

On habeas review, the inquiry is doubly deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), but under AEDPA this Court must also defer to the state court's application of *Strickland* unless it is objectively unreasonable. *See Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). To be clear, the Court is not deciding whether the state court's determination was correct under *Strickland,* but rather whether it "produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (internal quotation marks omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to

A9

reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. We address each of Grady's complaints of ineffective assistance in turn.

1. *Inconsistent Verdicts*

Grady alleges his appellate counsel failed to raise a sufficiency of the evidence claim regarding the inconsistent verdicts returned by the jury, and had his counsel done so, his verdict would have been overturned. He asserts that had counsel raised sufficiency of the evidence, the appellate court would have found that "irrational jury verdicts establish [the] state[] failed to prove [the] identity of the shooter beyond a reasonable doubt" and thereby overturn his conviction. Grady further asserts that the Illinois Appellate Court neglected to hear his ineffective assistance of counsel claim regarding inconsistent verdicts, and therefore, this Court should review his claim *de novo*.

Under *Strickland,* Grady must show that but for counsel's failure to raise this claim on direct appeal, the result would have been different. Grady has not met that burden. As discussed in terms of Grady's excessive sentence claim, Illinois law explicitly allows the state to prosecute, convict and sentence those involved in *some* way with a crime as legally accountable for the entire crime. *See* 720 ILCS 5/5-2-3. Illinois law holds that "a person charged as a principal can be convicted upon evidence showing he was in fact only an aider or abetter." *Ashburn v. Korte*, 761 F.3d, 741, 758 (7th Cir. 2014). In fact, even when a defendant is "completely unaware" of his co-defendant's intentions, he will still be held legally accountable for the crimes committed by those in the group. *Id.* at 758-59.

Even if appellate counsel would have raised a sufficiency of the evidence claim on direct appeal, it would not have been a meritorious claim for Grady. It was objectively reasonable for appellate counsel to conclude the same. Therefore, Grady's ineffective assistance of counsel claim fails in this regard.

2. *Aaron Bronson's testimony*

The Illinois Appellate Court held that appellate counsel's performance was not deficient because appellate counsel declined to raise an argument that Aaron Bronson's testimony was inherently unreliable. *Grady*, 2019 IL App. (1st) 163012-U, at *1. In making this determination, the appellate court first addressed whether Grady's claim would have been successful if raised on direct appeal. *Id.* at 5. The court noted that there were several other witnesses that testified at Grady's trial, video footage from the casino featuring Grady, and Grady's cell phone found near Turner's body, all creating overwhelming evidence that had "appellate counsel [ ] challenged the sufficiency of the evidence to sustain defendant's conviction on direct appeal, there would not have been reasonable probability that this court would have overturned [the] conviction." *Id.* at 6. The Illinois Appellate Court also found that Grady's argument that Bronson's testimony was "significantly impeached", was "unavailing" because it "corroborated the sequence of events as related by the other witnesses." *Id.* 5. Because the appellate court found on post-conviction review that there was no reasonable probability that it would have overturned the conviction if an attack on Bronson's reliability was raised by appellate counsel, the Illinois

Appellate Court found that Grady "suffered no arguable prejudice from counsel's failure to challenge his conviction on direct appeal." *Id.*

This determination was neither contrary to nor an unreasonable application of Supreme Court precedent. The appellate court expressly cited *Strickland* and applied that standard in a thorough and reasonable manner. It was not objectively unreasonable for the appellate court to conclude that Grady's appellate counsel's performance was reasonable, or that Grady was not prejudiced by counsel's performance given that the argument would have failed on direct appeal. Given the deferential standard of review under AEDPA, the Court finds the state appellate court's decision reasonable. Accordingly, Grady's ineffective assistance of counsel claim fails.

### D.    Ineffective Assistance of Appellate Counsel for Failing to Raise a Prosecutorial Misconduct Claim

Grady's claim that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim is procedurally defaulted. Pursuant to 28 U.S. § 2254 (b)(1), "an application for a writ of habeas corpus on behalf of a person in custody . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Before petitioning the federal court, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). A habeas claim that was not exhausted in state court will only be granted if it demonstrates a "fundamental miscarriage of

justice." *Id.* at 843. This is an exceedingly high standard. "It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke,* 737 F. 3rd 476, 483 (7th Cir. 2013).

Grady asserted that appellate counsel was ineffective for failing to raise a prosecutorial misconduct argument in his post-conviction PLA (Dkt 17, Exh F at 3). However, Grady did not raise this issue in the appellate court as required. *See generally* Dkt. 17, Exh. J. Grady also does not argue to this Court any cause for the default or prejudice arising from the default in his briefing. Grady does assert that he is not guilty of first-degree murder, but that does not meet the required standard for a "claim of innocence" to excuse default. A claim of innocence is only credible when a petitioner "support[s] his allegations of constitutional error with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S. Ct. 851, 851 (1995).  As a result, his petition on this specific claim is procedurally defaulted.

### E.     A Certificate of Appealability Is Warranted

If Grady wishes to appeal this denial, he must first obtain a certificate of appealability. Under 28 U.S.C.§ 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court" unless the circuit justice or judge first issues the certificate. 28 U.S.C.§ 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of

the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). The Court issues a certificate of appealability on Grady's ineffective assistance of counsel claim because reasonable jurists could differ on the question of whether the state appellate court reasonably addressed the inconsistent verdicts under *Strickland.*

## II.    Conclusion

For the stated reasons, Grady's Petition for a Writ of Habeas Corpus [1] is denied, and a certificate of appealability will issue.


E N T E R :


Dated: October 28, 2021

_____
MARY M. ROWLAND
United States District Judge

# CERTIFICATE OF SERVICE

I certify that on November 23, 2022, I electronically filed the foregoing appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that the following counsel of record will be served electronically (*see* Cir. R. 25(d)):

> Katherine M. Doersch
> Office of the Illinois Attorney General
> 100 West Randolph Street,
> State of Illinois Center
> Chicago, IL  60601

*Counsel for Appellee David Gomez*

I further certify that, in compliance with this Court's forthcoming order, I will transmit to the Clerk 15 copies of the short appendix (bound with the brief) and 10 copies of the remainder of the appendix. *See* Cir. R. 31(b).

 /s/ *Kelly M. Ellis*

Dated:  November 23, 2022